IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ADETUNJI AKANDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No.  05-cv-4212-JPG |
| | ) | |
| RANDALL GROUNDS, TERRY GUY, | ) | |
| JEANIE CAMPANELLA, and | ) | |
| DEE DEE BROOKHART, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

THIS CAUSE comes before the Court on the Defendants' Motion to Dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6) (Doc. 5).  Plaintiff Adetunji Akande ("Akande") has

responded to the motion (Doc. 15).

**I.      Standard for Dismissal**

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations as

true and draws all reasonable inferences in favor of the plaintiff.  *Brown v. Budz*, 398 F.3d 904,

908 (7th Cir. 2005);  *Holman v. Indiana*, 211 F.3d 399, 402 (7th Cir. 2000).  The Court should

not grant a motion to dismiss unless it appears beyond doubt that the plaintiff cannot prove his

claim under any set of facts consistent with the complaint.  *Brown*, 398 F.3d at 908-09;  *Holman*,

211 F.3d at 405.  "[I]f it is possible to hypothesize a set of facts, consistent with the complaint,

that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate."  *Brown*,

398 F.3d at 909 (internal quotations omitted);  *see Kolupa v. Roselle Park Dist.*, 438 F.3d 713,

715 (7th Cir. 2006).

**II.     Alleged Facts**

Accepting all facts in Akande's complaint as true and drawing all reasonable inferences

in his favor, the following facts are established.

Akande began working for the Illinois Department of Corrections ("IDOC") in 1990. Over the years, he rose through the ranks until in January 2003 he was promoted to the position of caseworker supervisor in the clinical services unit at Robinson Correctional Center ("Robinson"). Defendant Randall Grounds was Robinson's warden and defendant Terry Guy was the assistant warden. Defendants Dee Dee Brookhart and Jeanie Campanella were the clinical services supervisor and acting supervisor, respectively, and were Akande's direct supervisors in his position of caseworker supervisor.

As a caseworker supervisor, Akande had supervisory, administrative and managerial responsibilities, including delegating work to and supervising caseworkers. The caseworker supervisor position was also subject to the Illinois Personnel Code, 20 ILCS 415/1 *et seq*., and Illinois' Central Management Services' ("CMS") Personnel Rules, both of which provided that employees could not be terminated or demoted without good cause.

In his first year in that position, the caseworkers Akande supervised submitted numerous incident reports criticizing Akande. Believing that these complaints reflected incompetence to perform the duties of caseworker supervisor, the defendants removed Akande's supervisory duties and his authority to delegate work to caseworkers and added numerous clerical tasks that would ordinarily be performed by employees subordinate to caseworkers. They implemented these duty changes from late 2003 into 2004 and without giving Akande any kind of notice or holding any kind of hearing. Although Akande's job title and pay were not affected by these changes in job responsibilities, the changes caused him to suffer an emotional illness for which he took a medical leave of absence. The changes to his duties also adversely impacted his

2

opportunities to further his job skills and seek promotions within IDOC.

In November 2005, Akande filed this lawsuit under 42 U.S.C. § 1983 alleging that the defendants violated his Fourteenth Amendment rights by depriving him of a property interest without due process of law.  The defendants now ask the Court to dismiss Akande's case on qualified immunity grounds because Akande had no property interest in his position or job responsibilities or, in the alternative, because, if he had such a property interest, it was not clearly established at the time of the relevant events in this case.

**III.    Analysis**

Qualified immunity is an affirmative defense that shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982);  *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000).  It protects an official from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted."  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004);  *accord Saucier v. Katz*, 533 U.S. 194, 206 (2001).  It applies only to state officials who occupy positions with discretionary or policymaking authority and who are acting in their official capacities.  *Harlow*, 457 U.S. at 816; *Denius*, 209 F.3d at 950.

A court required to rule upon the qualified immunity issue must first consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.  *Saucier*, 533 U.S. at 201;  *see Brosseau*, 543 U.S. at 197;  *Wilson v. Layne*, 526 U.S. 603, 609 (1999).  If it is clear that there has been no constitutional violation, there is no need for further inquiry;  the official is entitled to qualified

3

immunity.  *Saucier*, 533 U.S. at 201.

If the plaintiff has alleged a constitutional violation, the Court must also determine whether the right was sufficiently clear at the time of the violation that a reasonable official would have understood that what he was doing violated that right.  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987);  *see Brosseau*, 543 U.S. at 199;  *Wilson*, 526 U.S. at 609; *Denius*, 209 F.3d at 950.  The plaintiff bears the burden of demonstrating that a constitutional right is clearly established.  *Denius*, 209 F.3d at 950.  The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Saucier*, 533 U.S. at 201;  *accord Brosseau*, 543 U.S. at 198.  To determine whether the right was clearly established, this Court looks to Supreme Court and Seventh Circuit Court of Appeals decisions, then, if there is no controlling precedent, to all relevant caselaw to determine if there is a clear trend.  *Denius*, 209 F.3d at 950-51.  "Qualified immunity is dissolved, however, if a plaintiff points to a clearly analogous case establishing a right to be free from the specific conduct at issue or when the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights."  *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001).

A.    Constitutional Violation

In order to state a § 1983 claim against an individual, a plaintiff must allege that the defendant deprived the plaintiff of rights secured by the Constitution or laws of the United States and that the defendant was acting under color of state law.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980);  *Brokaw v. Mercer Co.*, 235 F.3d 1000, 1009 (7th Cir. 2000).  To determine whether a plaintiff has stated a due process violation the Court asks two questions:  (1) whether the plaintiff was deprived of a protected property or liberty interest, and (2) what process was due.

4

*Sonnleitner v. York*, 304 F.3d 704, 711 (7th Cir. 2002);  *see Parratt v. Taylor*, 451 U.S. 527, 536-37 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).  At this stage of the case, the defendants' sole challenge is whether Akande has pled that he was deprived of a protected property interest in his job duties.

To establish a protected property right, a plaintiff must demonstrate a legitimate claim of entitlement, not just a hopeful expectation.  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972);  *Ulichny v. Merton Cmty. Sch. Dist.*, 249 F.3d 686, 702 (7th Cir. 2001);  *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989).  Property interests are not created by the Constitution but instead "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Roth*, 408 U.S. at 577;  *accord Ulichny*, 249 F.3d at 699-700;  *Polenz*, 883 F.2d at 555.  The claim of entitlement may be created, for example, by statute or by contract.  *Bishop v. Wood*, 426 U.S. 341, 344 (1976).

However, § 1983 only provides relief for deprivations of property that have "measurable economic value."  *Swick v. City of Chicago*, 11 F.3d 85, 87 (7th Cir. 1993).  Harms without such value are *de minimus* and are generally "intangible injuries normally small and invariably difficult to measure that must be accepted as the price of living in society rather than made a federal case out of."  *Id.*;  *see Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 530 (7th Cir. 2000);  *Head v. Chicago Sch. Reform Bd. of  Trustees,* 225 F.3d 794, 803 (7th Cir. 2000).  The framers of the Constitution did not intend to subject public employers to federal lawsuits every time they take a personnel action, especially when the personnel action has no

economic impact.  *See Parrett  v. City of Connersville*, 737 F.2d 690, 693 (7th Cir. 1984).

For example, in *Swick*, the Court of Appeals for the Seventh Circuit noted that harm to the "purely dignitary or otherwise nonpecuniary dimensions of employment," such as the "right to wear a uniform and a badge, to carry a gun, to arrest people, and to carry out other functions of a police officer" caused by a police officer's being forced to take involuntary sick leave fell into the category of harm for which the Constitution provided no remedy.  *Swick*, 11 F.3d at 87. Along the same lines, in *Bordelon*, the Court of Appeals considered a school principal who had a property interest in not being terminated from his position as principal without cause and who was transferred to the school district's central administrative office without a loss in pay to perform purely administrative tasks.  *Bordelon*, 233 F.3d at 526.  The Court of Appeals held that the principal's "loss of professional satisfaction and damage to personal relationships, reputation, and health" were not actionable property deprivations.  *Id.* at 530.

In this case, it is clear that Akande has a property right that is defined by state law, which provides that he cannot be demoted without cause.  *See* 20 ILCS 415/8b.16;  *compare Sonnleitner v. York*, 304 F.3d 704, 711 (7th Cir. 2002) (Wisconsin statute created property interest in not being demoted without cause).  The critical question is therefore whether the removal of his supervisory responsibilities and authority to delegate work and the addition of clerical tasks without any change in title or reduction in pay or benefits constitutes a demotion that is more than *de minimus* and that is therefore actionable under § 1983.

1.     Effects on Future Job Opportunities and Income

The defendants argue that because Akande's change in duties did not result in a reduction in pay, he cannot maintain an action for deprivation of a property right.  However, measurable

economic harms protected by the Fourteenth Amendment are not limited to reductions in wages or other compensation.  *Swick v. City of Chicago*, 11 F.3d 85, 87 (7th Cir. 1993).  They may include "the loss of position that impedes future job opportunities or has other indirect effects on future income."  *Head v. Chicago Sch. Reform Bd. of Trustees,* 225 F.3d 794, 803 (7th Cir. 2000);  *see Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 531 (7th Cir. 2000).

The defendants acknowledge that Akande alleges he lost certain economic benefits but argue that this vague pleading is not enough to withstand a motion to dismiss.  They do not mention, however, that Akande also pled that the defendants' conduct "adversely implicated [his] opportunities . . . to further his job skills and seek promotional advancement within [IDOC]."  Compl. ¶ 18.  Indeed, in the response to the motion to dismiss, Akande argues that because of his changed duties, he is subject to a change in job title and a pay cut, *see* 20 ILCS 415/8a;  80 Ill. Admin. Code §§ 301.10 & 301.20, which could impede his future job opportunities**.**  The Court therefore finds that the complaint sufficiently alleges a harm of measurable economic value that is protected by the Fourteenth Amendment due process clause.

### 2.   Constructive Discharge

Akande also argues that he may be able to prove a set of facts consistent with those in his complaint that he was constructively discharged when he took a medical leave of absence.  Measurable economic harms protected by the Fourteenth Amendment can be effected by a constructive discharge.  If an employee's pay and benefits are not reduced but the employee is relegated to intolerable working conditions, his departure from the employment can amount to a deprivation of a protected property right.  *See Wozniak v. Conry*, 236 F.3d 888 (7th Cir. 2001);  *Levenstein v. Salafsky*, 164 F.3d 345 (7th Cir. 1998);  *Parrett  v. City of Connersville*, 737 F.2d

690, 693-95 (7th Cir. 1984).

In *Parrett*, a police captain who could only be discharged for cause was not assigned any duties and was given a windowless, telephoneless room that had once been a closet to sit idly in during his working hours. *Parrett*, 737 F.2d at 693. He became ill (mentally and physically) as a consequence and took medical retirement from the police force. *Id.* The Court of Appeals upheld a jury verdict based on a finding that the police captain was constructively discharged and thereby deprived of his property right not to be discharged without cause. *Id.* at 694-95.

Similarly, in *Levenstein*, a tenured medical school professor and department head who could be terminated only if "necessary and justified" alleged that he was suspended, and therefore unable to see patients, and reassigned to demeaning "make-work" assignments clearly below his capabilities. *Levenstein*, 164 F.3d at 348, 350. The Court of Appeals held that such allegations pled a constructive discharge and thus a deprivation of a protectable property right. *Id.* at 351.

Of the cases cited by Akande, *Wozniak* most closely resembles his case. In *Wozniak*, a tenured professor was foreclosed from teaching, barred from researching and assigned instead to manage his department's website. *Wozniak*, 236 F.3d at 889. The Court of Appeals found that the duty changes could be the type that would cause a reasonable, self-respecting person to resign (as in *Parrett*) and could also impact the professor's prospects for promotion and for obtaining private consultant work (the kinds of harm to future income discussed in *Swick*, *Head* and *Bordelon*). *Id.* at 889-90. The Court of Appeals concluded that there was a question of fact whether the professor had been deprived of a property right. *Id.*

In this case, the Court is skeptical that Akande can show that his duty changes were so

8

intolerable that they amounted to a constructive discharge.  He was not relegated to a closet and given no work to do as in *Parrett*, and the duty changes he alleges pale in comparison to the changes imposed in *Levenstein*.  They do, however, resemble the duty changes imposed in *Wozniak*.  In *Wozniak* and the case at bar, the plaintiff was given the same salary and title and was kept in the same department but was given tasks of vastly less significance that were outside his area of professional training.  Because there is a remote possibility that Akande may be able to show that the changes in his duties were so "out of the ordinary" and "unheard of" for someone in his position, *see Wozniak*, 236 F.3d at 889, that they amounted to a constructive discharge, the Court must find his complaint has sufficiently alleged an actionable deprivation of property.

For the foregoing reasons, the Court finds that Akande has stated a constitutional due process claim and will go on to examine whether the constitutional right he claims the defendants violated was clearly established at the time such that the defendants should have understood that what they were doing violated that right.  *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

 B. <u>Clear Establishment of Right</u>

It was clear at the time of the events in this case that a public employee's constructive discharge or effective demotion by job duty changes that impeded future job opportunities or had other indirect effects on future income amounted to a deprivation of a property interest protected by the Fourteenth Amendment.  *See Swick v. City of Chicago*, 11 F.3d 85, 87 (7th Cir. 1993); *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 530 (7th Cir. 2000);  *Head v. Chicago Sch. Reform Bd. of  Trustees,* 225 F.3d 794, 803 (7th Cir. 2000)*.  Swick*, *Bordelon* and

*Head* clearly establish this general principal of which the defendants should have been aware in 2003.  In addition, *Wozniak v. Conry*, 236 F.3d 888 (7th Cir. 2001), provides a closely analogous factual situation that should have put the defendants on notice that the actions alleged to have occurred in this particular case, if true, deprived Akande of a protected property interest.  As explained before, *Wozniak* is similar to the case at bar in that the plaintiff in that case kept his salary and title but was given tasks of vastly less significance in his department and outside his area of professional training.

Thus, taking all facts alleged in the complaint as true, as the Court must at this stage, the Court concludes that *Swick*, *Bordelon*, *Head* and *Wozniak* clearly established before 2003 that such changes were deprivations of protected property interests and that a reasonable official in the defendants' positions would have understood that, by so drastically changing Akande's job duties, what he or she was doing was unconstitutional.

## IV.    Conclusion

For these reasons, the Court finds that the defendants are not entitled to qualified immunity at this stage of the case and therefore **DENIES** the motion to dismiss (Doc. 5).


**DATE: July 6, 2006**          **JUDGE:**          s/ J. Phil Gilbert

10